## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CODY COULTON, et al.,

*Plaintiffs,*

v.

VINCENT GAETANO LOMBARDI, et al.,

*Defendants.*

Case No. 2:25-cv-13911

Hon. Robert J. White

---

Michael Chehab (P79912)
Blue Oak Law Firm PLLC
Attorney for Plaintiffs
38410 Westchester Rd
Sterling Heights, MI 48310
(586) 353-5289
mchehab@blueoaklawfirm.com

Jason Morrow
Defendant, *Pro Se*
222 Equestrian Drive
Lafayette, IN 47905
(765) 532-0256
Jason.printworks3d@gmail.com

Jasper William Yonker
Defendant, *Pro Se*
394 W. Second St
Boston, MI 02127
(941) 928-8467
jasperyonker@gmail.com

Vincent Lombardi
Defendant, *Pro Se*
3310 Barstow St,
Sarasota, FL 34235
(941) 354-8361
Vincentlombardisrq@gmail.com

---

## PLAINTIFFS' RESPONSE TO DEFENDANT VINCENT LOMBARDI'S MOTION TO DISMISS

NOW COME Plaintiffs, by and through undersigned counsel, and for their Response to Defendant Vincent Gaetano Lombardi's Motion to Dismiss (ECF No. 15), provide as follows:

1. Defendant's arguments regarding personal jurisdiction fail because he purposefully directed fraudulent communications and scheme activity toward Michigan residents, and because the federal securities laws and RICO authorize nationwide service of process.

2. Defendant's arguments under Federal Rules of Civil Procedure 12(b)(6) and 9(b) are without merit because the Complaint pleads specific, attributable facts demonstrating his role as the self-identified "mastermind" of the alleged scheme, his control over the enterprise, and his personal fraudulent conduct.

   **WHEREFORE**, Plaintiffs respectfully request that this Honorable Court **DENY** Defendant Lombardi's Motion to Dismiss in its entirety for the reasons set forth in the accompanying Brief in Support.

Respectfully submitted,


/s/ Michael A. Chehab
Michael A. Chehab (P79912)
Blue Oak Law Firm PLLC
Attorney for Plaintiffs
38410 Westchester Rd
Sterling Heights, MI 48310
(586) 353-5289
mchehab@blueoaklawfirm.com                    Dated: February 27, 2026

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CODY COULTON, et al.,                          Case No. 2:25-cv-13911

    *Plaintiffs,*                              Hon. Robert . White

v.

VINCENT GAETANO LOMBARDI, et al.,

    *Defendants.*

---

Michael Chehab (P79912)
Blue Oak Law Firm PLLC
Attorney for Plaintiffs
38410 Westchester Rd
Sterling Heights, MI 48310
(586) 353-5289
mchehab@blueoaklawfirm.com

Jason Morrow
Defendant, *Pro Se*
222 Equestrian Drive
Lafayette, IN 47905
(765) 532-0256
Jason.printworks3d@gmail.com

Jasper William Yonker
Defendant, *Pro Se*
394 W. Second St
Boston, MI 02127
(941) 928-8467
jasperyonker@gmail.com

Vincent Lombardi
Defendant, *Pro Se*
3310 Barstow St,
Sarasota, FL 34235
(941) 354-8361
Vincentlombardisrq@gmail.com

---

## BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANT LOMBARDI'S MOTION TO DISMISS

## <u>ISSUES PRESENTED</u>

1.      Whether this Court has personal jurisdiction over Defendant Lombardi under the nationwide service provisions of the federal securities laws and RICO, and alternatively under Michigan's long-arm statute, where he directed the alleged fraudulent communications to Michigan residents and controlled / directed the smart contract interacting with Michigan-based assets.

**Plaintiff answers: <u>Yes</u>.**

2.      Sufficiency of Pleading: Whether Plaintiffs have sufficiently stated claims for securities fraud, RICO, and related state torts where the Complaint attributes specific misrepresentations to Lombardi by name (supported by video evidence and transcripts), alleges he admitted to selling personal tokens while telling investors to continue holding, and alleges he destroyed evidence after receiving a preservation notice.

**Plaintiff answers: <u>Yes</u>.**

## CONTROLLING AUTHORITIES

**Cases**

*S. Mach. Co. v. Mohasco Indus.*, 401 F.2d 374 (6th Cir. 1968);

*Power Investments, LLC v. SL EC, LLC*, 927 F.3d 914 (6th Cir. 2019);

*United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320 (6th Cir. 1993);

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009);

*Frank v. Dana Corp.*, 547 F.3d 564 (6th Cir. 2008);

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007);

*Lorenzo v. SEC*, 587 U.S. 71 (2019);

*Boyle v. United States*, 556 U.S. 938 (2009);

*Reves v. Ernst & Young*, 507 U.S. 170 (1993);

*Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783 (6th Cir. 2012);

*Beaven v. U.S. Dep't of Justice*, 622 F.3d 540 (6th Cir. 2010);

*Jonna v. Latinum*, 617 F. Supp. 3d 758 (E.D. Mich. 2022);

**Statutes & Rules**

15 U.S.C. § 77v(a) (Securities Act § 22(a));

15 U.S.C. § 78u-4(b)(2) (PSLRA);

18 U.S.C. § 1965(b) (RICO Venue & Process)

MCL § 600.705 (Long-Arm Jurisdiction

# I. INTRODUCTION

Defendant Vincent Gaetano Lombardi is the self-labeled "mastermind" behind the Zelda cryptocurrency projects, which solicited funds from investors under the false promise that this was a "crypto-charity to save dogs" while simultaneously promising a "smooth 300x" return on investment. Once investments were secured, large purchasers had their wallets blacklisted and frozen, trapping their purchasing currency in the liquidity pool while they were stuck with soon illiquid Zelda tokens. The investor funds were then extracted via direct transfer from the liquidity pool and through the sale of tokens held by several undisclosed personally controlled wallets to which Zelda tokens had been quietly transferred to at launch.

Upon learning that several investors were requesting their wrongfully taken funds be returned, Defendants immediately began deleting all publicly and investor-incriminating evidence. Much of this, fortunately, was preserved by Plaintiffs and some of which has already been offered into evidence.

As detailed in Plaintiffs' Complaint and the exhibits attached thereto, Defendant Lombardi orchestrated and directly benefitted from the scheme – which targeted investors across the country, including investors in Michigan whom he directly solicited. These conversations were preserved and included as Exhibits to Plaintiff's Complaint.

Defendant Lombardi moves to dismiss under Rules 12(b)(2), 12(b)(6), and 9(b). He centrally argues that Plaintiffs "fail to allege that [he personally] authored any alleged misrepresentation" and claims that Plaintiffs' Complaint relies on non-factual claims, "group pleading," and "speculation." (ECF No.15, PageID.357). At the outset, these claims simply ignore the extensive and detailed facts alleged in the Complaint against Mr. Lombardi – all of which are supported by evidence preserved prior to Defendants' deletion of evidence and are pled with specific dates, platforms, quotes, sources, and exhibits, including:

- Defendant Lombardi personally solicited investors via a live video on May 3, 2024, promising a "fair launch" (ECF No. 1, PageID.18);

- Lombardi directed his team to create "4500" fake accounts to generate fabricated "social proof" of community interest (ECF No. 1, PageID.13).

- Lombardi directly solicited and communicated with Michigan residents, of which there is direct documentation and preservation of the conversation pre-deletion. These solicitations were made via Lombardi's verified Telegram handle – promising the victims "300x easy" returns to induce investment (ECF No. 1, PageID.6).

- Lombardi possessed and exercised technical control, including documented quotes of him attempting to "solve the glitch issue" during launch. (ECF No. 1, PageID.13);

- In the months following the mass blacklisting and taking of funds, Lombardi showcased lavish spending including the purchase of a Lamborghini Urus and Nissan GTR, despite claiming financial hardship from hurricanes. (ECF No. 1, PageID.4, 25).

- Defendant later confessed to selling his personal token holdings ("Yes I sold a few of my wallets") while simultaneously having urged investors not to sell (ECF No. 1, PageID.26);

- Lombardi took part in the spoliation of evidence, in which the entire Zelda 2.0 Telegram channel (which he was the administrator of) and at least 35 official YouTube videos were deleted immediately after receiving a preservation notice. (ECF No. 1, PageID.2, 23, 28); and

- More recently, Lombardi affirmatively took acts to avoid service of process and claimed to "in the middle of an eviction" and did not have any money to hire a lawyer, while simultaneously posting videos and photographs on social media of his new $320,000.00 luxury sports vehicle purchase. (ECF No. 6, PageID.221).

## II. LEGAL STANDARDS

### A. Rule 12(b)(2): Personal Jurisdiction

When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and the court relies solely on written submissions, the plaintiff bears only a "relatively slight" burden to establish a *prima facie* showing of jurisdiction.

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552 (6th Cir. 2007). The court must construe the pleadings and affidavits in the light most favorable to the plaintiff and may not weigh the controverting assertions of the defendant. *Id. See also Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020).

This Court has applied precisely this framework. In *Dobronski v. Training Force USA, LLC*, No. 24-cv-10083 (E.D. Mich. May 16, 2025), the Court highlighted that when resolving a 12(b)(2) motion "exclusively through written submissions," the plaintiff need only "assert reasonably particular allegations in the complaint to establish personal jurisdiction." This Court also held that a defendant's self-serving affidavit disclaiming any role in the tortious conduct is "irrelevant" at this stage: "the plaintiff's prima facie burden does not change with the submission of an affidavit from the party challenging jurisdiction." *Id.* (citing *Malone*, 965 F.3d at 505–06).

Lombardi's Motion does not acknowledge these standards and simply asserts – contrary to evidence proffered, that he "did not target Michigan residents" and "did not conduct Michigan-directed activity" (ECF No. 15, PageID.360). At this stage, however, such denials are not weighed by the Court against the Complaint's well-pled allegations.

9

### B. *Rule 12(b)(6):* **Plaintiffs Have Sufficiently Stated Plausible Claims**

To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. All well-pleaded factual allegations must be accepted as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.*

Lombardi repeatedly asserts in support of his Motion that Plaintiffs' Complaint should be dismissed, claiming that the complaint failed to establish/allege specific wallet ownership, trace funds to his bank account, or establish that he "authored" every misrepresentation. (ECF No. 15, PageID.358–359). Lombardi's assertion that Plaintiffs must *prove* specific wallet ownership or trace funds to his account conflates the pleading standard with the evidentiary burden and later determinations which would require findings of fact. A motion to dismiss tests the plausibility of the complaint's allegations, not their absolute proof.

At this stage, Plaintiffs need only meet a "relatively minimal burden" to raise such a "reasonable expectation." *IOSiX, LLC v. EZLogz, Inc.*, No. 24-cv-10777 (E.D.

Mich. Jan. 28, 2026) (White, J.). This Court's colleagues have applied these exact standards in a materially identical cryptocurrency-fraud case. In that decision, the Court held that allegations of a promoter's false promises, investor reliance, and the entity's acceptance of funds without inquiry were sufficient to survive dismissal – without requiring proof of specific wallet ownership or traceable bank deposits. *Jonna v. Latinum,* No. 22-10208, 2022 WL 2953585 (E.D. Mich. July 26, 2022). Forensic tracing of cryptocurrency digital wallets is precisely the purpose of discovery, not a prerequisite for pleading.

### C. Rule 9(b) and the PSLRA

Rule 9(b) requires that a plaintiff plead the "who, what, when, where, and how" of the alleged fraud. *Frank v. Dana Corp.*, 547 F.3d 564, 569–70 (6th Cir. 2008). For securities fraud, the PSLRA requires "facts giving rise to a strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2). Under *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), that inference need only be "at least as compelling as any opposing inference." Under *Tellabs*, courts must consider competing inferences and determine whether the inference of scienter is at least as compelling as any opposing inference. 551 U.S. at 324. The Sixth Circuit applies that comparative approach. *Frank*, 547 F.3d at 571–72.

Lombardi invokes Rule 9(b) and the PSLRA to argue that the Complaint engages in impermissible "group pleading." (ECF No. 15, PageID.358–359). This is

misguided. After the "who, what, when, where, and how" are sufficiently pleaded, the rule does not further require that every statement be traced to a single author with any sort of forensic certainty. The requirement is, instead, that the complaint provide the defendant with fair notice of the fraud alleged against him. *Id.* Defendant's suggestion that the Complaint must go beyond attributing specific, dated, documented statements to him by name imposes a standard much higher than what Rule 9(b) and the PSLRA require. Furthermore, Defendant's "group pleading" argument is demonstrably contradicted by the direct, individualized conduct attributed to him and evidenced within the Complaint.

## III. THIS COURT HAS PERSONAL JURISDICTION OVER LOMBARDI

Lombardi argues that as a Florida resident he has no Michigan contacts sufficient for jurisdiction. (ECF No. 15, PageID.360). This argument fails on three independent grounds.

### A. Specific Jurisdiction Exists Under Michigan's Long-Arm Statute and the Due Process Clause

Michigan's long-arm statute, MCL § 600.705, extends jurisdiction to the limits of due process and is "extraordinarily easy to satisfy." *Sifers v. Horen*, 385 Mich. 195, 199 (1971). The Sixth Circuit applies a three-part test: (1) the defendant purposefully availed himself of the privilege of acting in Michigan; (2) the claims arise from the defendant's activities in the state; and (3) the exercise of jurisdiction

is reasonable. *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). All three elements are satisfied.

### 1. Purposeful Availment.

The Sixth Circuit holds that personal jurisdiction exists where a defendant conducts fraud through targeted interstate communications, even without physical presence in the forum. In *Power Investments, LLC v. SL EC, LLC*, 927 F.3d 914, 918 (6th Cir. 2019), the court reversed dismissal where the defendant defrauded a Kentucky resident entirely through phone calls and emails, emphasizing that "[m]odern business often occurs electronically." Similarly, in *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001), the court upheld jurisdiction over a Belgian defendant who directed fraudulent solicitations into Tennessee entirely through telephone and fax.

Here, the Complaint alleges far more than passive internet accessibility. Lombardi engaged in direct, interactive Telegram conversations with a documented and exhibited, known Michigan investor – making specific promises of "300x easy" returns designed to induce the investor to transfer assets from Michigan-based wallets. (ECF No. 1, PageID.6). Additional Michigan investors were "directly targeted for investments" through the official Telegram channel (ECF No. 1, PageID.5).

This is fundamentally different from *Blessing v. Chandrasekhar*, 988 F.3d 889 (6th Cir. 2021), where the Sixth Circuit rejected jurisdiction because the defendants "took no affirmative steps to direct any communications" into the forum. *Id.* at 906. In distinguishing *Power Investments*, *Air Products*, and *Neal*, the court emphasized those cases involved defendants who purposefully sent allegedly tortious communications directly to forum-state plaintiffs. *Id.* at 904–06. Lombardi's direct Telegram solicitations to known Michigan investor(s), at least one documented via official channels, place this case within the purview of the *Power Investments* / *Neal* line of cases.

To the extent Lombardi invokes *Walden v. Fiore*, 571 U.S. 277 (2014), the Supreme Court expressly reserved the question of internet-based contacts. *Id.* at 291 n.9. In *Walden*, the defendant's allegedly wrongful conduct occurred entirely in Georgia and was not directed at Nevada itself. 571 U.S. at 289–91. Here, by contrast, Lombardi allegedly communicated directly with known Michigan resident(s) to induce investment – and evidenced by specific investment promises, and his enterprise's smart contract caused the loss of funds from the associated Michigan-based wallet(S) – the *Calder v. Jones*, 465 U.S. 783 (1984), identified intentional conduct aimed at the forum.

## 2. Arising From.

14

Plaintiffs' claims directly arise from Lombardi's Michigan-directed activity. The Michigan investor's reliance on Lombardi's "300x easy" promise and other solicitations made via the Telegram channel and YouTube AMAs are central to the claims of securities fraud, common-law fraud, and conversion. The arising-from requirement "does not require that the cause of action formally 'arise from' defendant's contacts with the forum; rather it requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities.'" *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002).

### 3. Reasonableness.

The exercise of jurisdiction is reasonable where the forum state has an interest in adjudicating the dispute, the plaintiff has an interest in obtaining convenient and effective relief, and the judicial system has an interest in obtaining the most efficient resolution. *S. Mach.*, 401 F.2d at 381. Michigan has a strong interest in protecting its residents from interstate fraud. Plaintiff Purovic resides in Macomb County, suffered financial injury in Michigan, and executed his purchase transactions from this District. (ECF No. 1, PageID.7).

### B. Nationwide Service of Process

Alternatively, Securities Act § 22(a) and Exchange Act § 27 authorize service "in any other district of which the defendant is an inhabitant or wherever the defendant may be found." Similarly, RICO authorizes nationwide service of process.

18 U.S.C. § 1965(b). Under Fed. R. Civ. P. 4(k)(1)(C), such service establishes personal jurisdiction. *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993). When personal jurisdiction rests on a nationwide-service statute, the court evaluates the defendant's contacts with the *United States as a whole*, not merely the forum state, and the relevant constitutional constraint is the Fifth Amendment rather than the Fourteenth. Because Lombardi is a United States domiciliary residing in Florida, the national contacts test is easily met and Personal jurisdiction thus exists as a matter of law as to all these federal claims.

### C. Pendent Personal Jurisdiction Over State-Law Claims

Where a federal statute provides nationwide service and the federal and state-law claims derive from a "common nucleus of operative fact," courts may exercise pendent personal jurisdiction over the related state-law claims even if those claims would not independently satisfy a forum-state contacts analysis. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018); *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105, 117 (3d Cir. 2020); *see also Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180–81 (9th Cir. 2004). The Sixth Circuit has recognized that nationwide-service provisions permit evaluation of contacts with the United States as a whole. *See United Liberty Life*, 985 F.2d at 1330. Here, every state-law claim arises from the same facts underlying the federal securities and RICO claims: the alleged false promises by Lombardi, the wallet freezes / rug pull,

retention of investor funds, and destruction of evidence – rendering pendent personal jurisdiction as appropriate.

## IV. THE COMPLAINT STATES SECURITIES FRAUD CLAIMS

### A. Rule 9(b) Is Satisfied

The Complaint identifies Lombardi as the person who: (1) made the "300x easy" promise to a Michigan investor on March 18, 2024 via Telegram (ECF No. 1, PageID.5–6); (2) directed the creation of 4,500 fake bot accounts on February 27, 2022 (ECF No. 1, PageID.13); (3) promised a "fair launch for everybody" at the May 3, 2024 YouTube AMA (ECF No. 1, PageID.18); (4) stated his teammates "are not whitelisted – that is a fair launch" (ECF No. 1, PageID.18); (5) assured investors "you're going to be fine" (ECF No. 1, PageID.20); (6) admitted to selling undisclosed personal ZLDA holdings (ECF No. 1, PageID.26); and (7) represented the project was "fully doxxed" while now claiming he does not know the identify of the actual developer of the Zelda Project's identity (ECF No. 1, PageID.18–19). These are statement-by-statement attributions with dates, platforms, and record citations – more than satisfying Rule 9(b). *Frank*, 547 F.3d at 569–70.

Lombardi's "group pleading" argument (ECF No. 15, PageID.358–359) is factually incorrect. The seven attributions above identify him by name with documentary support. His contention that his verified Telegram account may have been impersonated is a factual dispute for discovery, not a pleading defect.

### B. Scheme Liability Under Lorenzo v. SEC

Even if any statement were imperfectly attributed to Lombardi as the "maker," his conduct independently constitutes scheme liability under Rule 10b-5(a) and (c). In *Lorenzo v. SEC*, 587 U.S. 71, 80–81 (2019), the Supreme Court held that scheme liability is available even against those who did not "make" a false statement under subsection (b), because subsections (a) and (c) broadly capture those who "employ" a "device, scheme, or artifice to defraud."

The Complaint alleges Lombardi conceived and directed the enterprise (ECF No. 1, PageID.1–2); controlled the promotional apparatus (ECF No. 1, PageID.8, 11); orchestrated fake accounts (ECF No. 1, PageID.13); presided over the AMA (ECF No. 1, PageID.19–20); exercised technical control (ECF No. 1, PageID.13); and directly profited through undisclosed token sales (ECF No. 1, PageID.25–26).

### C. Scienter Is Adequately Pled

Under *Frank*'s equipoise test, the inference of scienter need only be "at least as compelling as any opposing inference." 547 F.3d at 577. The following facts, taken together, far exceed equipoise:

*Motive and Opportunity:* Lombardi directed fake account creation, orchestrated the campaign, presided over the rug pull, and purchased a Lamborghini Urus and Nissan GTR while claiming financial hardship. (ECF No. 1, PageID.13,

25), and admitting to selling personal holdings while urging investors to hold. (ECF No. 1, PageID.26).

*Contradictory Statements*: While repeatedly promising a "fair launch" and "100% Locked Liquidity" the smart contract contained the blacklist function. (ECF No. 1, PageID.3, 18). Lombardi claimed the project was "fully doxxed" while now stating that the project lead developer was actually someone who he does not know the identity of. (ECF No. 1, PageID.18–19).

*Temporal Pattern*: The same scheme repeated across two iterations – Zelda Inu (2021-22) and Zelda 2.0 (2024), both of which he "mastermind." (ECF No. 1, PageID.3, 14).

*Consciousness of Guilt*: After receiving a preservation notice, Defendants destroyed the Telegram channel and 35 YouTube videos (now over 50). (ECF No. 1, PageID.27–28). *Beaven*, 622 F.3d at 554.

Taken holistically, these allegations more than satisfy *Frank*'s equipoise standard. *See e.g., Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971, 979 (6th Cir. 2018).

### D. Reliance and Loss Causation

The Complaint alleges each Plaintiff relied on Defendants' representations. (ECF No. 1, PageID.7–8, 20–21). Paragraph 20 specifically alleges direct reliance on Lombardi's "300x easy" promise. (ECF No. 1, PageID.5–6). Reliance may also

be presumed under the fraud-on-the-market doctrine, *Basic Inc. v. Levinson,* 485 U.S. 224, 247 (1988), and because the scheme relied heavily on material omissions (such as the hidden blacklist function and undisclosed developer wallets), reliance is independently presumed under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153–54 (1972). Pleading direct reliance alongside the presumption for omissions forecloses Defendant's argument at the motion to dismiss stage. Loss causation is direct: Plaintiffs invested in reliance on false promises and suffered losses when Defendants blacklisted wallets and drained liquidity. (ECF No. 1, PageID.21–22).

## V. THE COMPLAINT STATES SECTION 12 CLAIMS

Section 12 imposes liability on any person who "offers or sells" a security by means of a misstatement. Both the Eleventh and Ninth Circuits have recently held that Section 12 does not require individualized solicitation. *Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341, 1347–49 (11th Cir. 2022) ("[T]he Securities Act does not distinguish between individualized and mass solicitations"); *Pino v. Cardone Capital, LLC*, 55 F.4th 1253, 1256–57 (9th Cir. 2022). While not binding in this Circuit, these decisions represent the emerging consensus; on cryptocurrency-marketing. Although not binding in this Circuit, those courts concluded that mass, internet-based solicitations may satisfy Section 12's solicitation requirement. Lombardi led the May 3, 2024 AMA, appeared in promotional videos, and directly

communicated with investors on Telegram. (ECF No. 1, PageID.5–6, 8, 18). For Section 12 claims, reliance is not an element – only solicitation and materiality. *Wildes*, 25 F.4th at 1349.

## VI. RICO CLAIMS ARE ADEQUATELY PLED

Under *Boyle v. United States*, 556 U.S. 938, 948 (2009), the enterprise is adequately pled: the Complaint identifies executive, technical, and promotional tiers spanning 2021–2025. (ECF No. 1, PageID.12). Under *Reves v. Ernst & Young,* 507 U.S. 170, 179 (1993), Lombardi's participation – as self-proclaimed "mastermind" and "ultimate decision-maker" who directed fake accounts, led AMA sessions, and exercised technical control – satisfies the operation-or-management test. (ECF No. 1, PageID.8, 12–13).

Each Telegram message, YouTube video, and website posting containing false representations constitutes a potential wire-fraud predicate act. 18 U.S.C. § 1343; *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012). The Sixth Circuit reversed RICO dismissal on analogous investment-fraud facts in *Ouwinga v. Benistar 419 Plan Servs., Inc.,* 694 F.3d 783, 793–94 (6th Cir. 2012). Lombardi's luxury purchases (ECF No. 1, PageID.25) and token-sale confession (ECF No. 1, PageID.26) evidence receipt of the RICO proceeds as alleged.

## VII. CONTROL-PERSON LIABILITY IS ADEQUATELY PLED

Section 20(a) requires only "the power to direct or cause the direction of the management and policies" of the primary violator. *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 472 (6th Cir. 2014). It does not require contractual authority or wallet ownership. Defendant's argument that Plaintiffs must prove his complete ownership of specific digital wallets misconstrues the applicable law; control over the enterprise and its deceptive practices is sufficient. The Complaint explicitly alleges Lombardi was the "mastermind" and "ultimate decision-maker." (ECF No. 1, PageID.12–13, 19–20, 32).

## VIII. STATE-LAW CLAIMS ARE ADEQUATELY PLED

Conversion: The Complaint alleges Defendants exercised wrongful dominion over Plaintiffs' assets through the blacklist function and liquidity drain. (ECF No. 1, PageID.21–22, 38–39). Lombardi benefited through luxury purchases and token sales. (ECF No. 1, PageID.25–26). Under MCL § 600.2919a, Plaintiffs are entitled to treble damages.

MCPA: The MCPA, MCL § 445.903, prohibits the deceptive practices alleged: false representations, false promises of locked liquidity, and deceptive charitable claims. (ECF No. 1, PageID.39–40). Because the Zelda tokens were unregistered and operated as a fraudulent scheme, this conduct was not "specifically authorized" by any regulatory board, rendering the MCPA's exemption under MCL § 445.904(1)(a) inapplicable. *See Attorney General v. Diamond Mortgage Co.,* 414

Mich. 603, 617 (1982) (holding that fraudulent misrepresentations are not shielded by statutory exemptions).

Unjust Enrichment: The Complaint states a valid claim for unjust enrichment, as Lombardi unjustly profited through luxury vehicles and token sales while Plaintiffs lost their entire investment through a blacklist and subsequent revocation of the contract so that the blacklists became irreversible regardless of any subsequent "determination" by the Team after "investigating" and determining several weeks later that a blacklisting was improper and sending "replacement tokens" worth a fraction of the prior value, after liquidity withdrawal and token collapse. (ECF No. 1, PageID.25–26).

Veil Piercing: The Complaint alleges Lombardi's LLCs and other corporate defendants (which he is alleged to have used to, for example, to purchase exotic vehicle(s) – one of which he self-described via Facebook as a "business expenses") – had been utilized as alter egos to commingle and conceal fraud proceeds. (ECF No. 1, PageID.3, 8–9). While veil piercing is an equitable theory of liability rather than a standalone tort, *Gallagher v. Persha*, 315 Mich. App. 647, 664 (2016), these allegations plausibly support an alter-ego theory. Whether the elements are ultimately satisfied is a fact-intensive inquiry not typically resolved on a Rule 12(b)(6) motion. *Twombly*, 550 U.S. at 555.

## IX. SPOLIATION WARRANTS ADVERSE INFERENCES

Under *Beaven*, 622 F.3d at 553, adverse inferences require (1) a duty to preserve, (2) culpability, and (3) relevance. All are met. Defendants received a preservation notice on June 25, 2025. (ECF No. 1, PageID.27). In direct response, they deleted the entire Telegram channel and 35 YouTube videos – including the May 3, 2024 AMA and Lombardi's investor communications. (ECF No. 1, PageID.27–28). A second notice was similarly disregarded. (ECF No. 1, PageID.28). This was not negligent, and was repeated a second time where the removed content (YouTube) was again selectively made and included the specific removal of incriminating content (such as making promises such as future staking or giving self-described "advice" regarding investments).

Lombardi cannot logically argue insufficient pleading regarding evidence he took part in destroying. The plausibility standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence." *Twombly*, 550 U.S. at 556. Courts routinely hold that a defendant may not shield himself from liability by destroying the very evidence that would prove his fraud, and then crying "insufficient pleading." See *Beaven*, 622 F.3d at 553. Where a defendant destroys relevant evidence after a duty to preserve arises, courts may draw appropriate inferences at stages of litigation. *Beaven*, 622 F.3d at 553–54.

## X. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court DENY Defendant Lombardi's Motion to Dismiss. In the alternative, Plaintiffs request limited jurisdictional discovery.

Respectfully submitted,


/s/ Michael A Chehab
Michael A Chehab (P79912)
Blue Oak Law Firm PLLC
Attorney for Plaintiffs
38410 Westchester Rd
Sterling Heights, MI 48310


## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system.


/s/ Michael A Chehab
Michael A Chehab (P79912)

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CODY COULTON, et al.,                         Case No. 2:25-cv-13911

      *Plaintiffs,*                         Hon. Robert J. White

v.

VINCENT GAETANO LOMBARDI, et al.,

      *Defendants.*

---

## BRIEF FORMAT CERTIFICATION FORM

---

I, Michael A Chehab, certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1, and Judge White's Case Management Requirements, including the following (click each box to indicate compliance):

☒    the brief contains a statement regarding concurrence (not necessary for response brief), *see* LR 7.1(a);

☒    the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☒    the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒      the brief and all exhibits are filed in searchable PDF format, *see* Case

Management Requirements § III.A;

☒      except for footnotes and necessary block quotes, the brief is double spaced

(<u>not</u> "Exactly 28 pt" spaced) with one-inch margins, *see* LR 5.1(a)(2);

☒      deposition transcripts have been produced in their entirety (<u>not</u> in

minuscript), *see* Case Management Requirements § III.A;

☒      if the brief and exhibits total 50 pages or more, I will mail to chambers a

courtesy copy with ECF headers, *see* Case Management Requirements § III.B.


I also acknowledge that my brief will be stricken from the docket if the Court later

finds that these requirements are not met.


<u>/s/ Michael A Chehab</u>
Michael A Chehab (P79912)
Blue Oak Law Firm, PLLC
Attorney for Plaintiffs Coulton et al.          Dated: <u>February 27, 2026</u>